Michael Zoldan; AZ Bar No. 028128
Amanda Kuklinski; AZ Bar No. 035676
**ZOLDAN LAW GROUP, PLLC**
14500 N. Northsight Blvd., Suite 133
Scottsdale, AZ 85260
Tel & Fax: 480.442.3410
mzoldan@zoldangroup.com
akuklinski@zoldangroup.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| **Jennivene France**; an Arizona resident;<br><br>Plaintiff,<br><br>v.<br><br>**Wireless Vision, LLC**, a Michigan limited liability company;<br><br>Defendant. | Case No.<br><br>**VERIFIED COMPLAINT**<br><br>**(Jury Trial Requested)** |

Plaintiff Jennivene France ("**France**"), for her complaint against Defendant Wireless Vision, LLC ("**Wireless Vision**") hereby alleges as follows:

## **PARTIES**

1. Plaintiff is, and at all times relevant hereto was, a resident of Maricopa County, Arizona.

2. Upon information and belief, Wireless Vision is a Michigan limited liability company which is registered to conduct business and is currently doing business in the State of Arizona.

## **JURISDICTION AND VENUE**

3. All acts complained herein occurred in Maricopa County, Arizona, and this

1

Court has jurisdiction over the parties and subject matter set forth in this Complaint pursuant to the Americans with Disabilities Act and the ADA Amendments Act (collectively referred to as "**ADA**"), 42 U.S.C. 12101, *et seq.*, and the Family and Medical Leave Act ("**FMLA**"), 29 U.S.C. § 2601, *et seq*.

4. This Court has federal question subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 in that the claims set forth in this Complaint arise under federal law.

5. The employment practices alleged to be unlawful were committed within, and had their primary effect in, the jurisdiction of the United States District Court for the District of Arizona.

6. Plaintiff was, at all relevant times, an employee of Wireless Vision within the meaning of the ADA and the FMLA.

7. Plaintiff was an "eligible employee" within the meaning of the FMLA.

8. At all relevant times, Wireless Vision has continuously been an employer within the meaning of the ADA and the FMLA.

9. Personal jurisdiction in this Court is proper.

10. Venue in this Court is proper.

## FACTUAL ALLEGATIONS

11. Plaintiff commenced employment with Wireless Vision's predecessor, T-Mobile, in 2017.

12. In August 2018, Plaintiff was promoted to store manager.

13. Plaintiff continued employment with Wireless Vision when it purchased T-Mobile in or around October 2018.

2

14. In October 2019, Plaintiff's store was severely understaffed, leaving Plaintiff and one other employee to work all the store's open hours.

15. As store manager, Plaintiff did not have authority to hire new employees; rather, she created job postings and conducted first-round interviews only.

16. When Plaintiff recommended a prospective employee for hire, her direct supervisor, regional manager Zach Tenhaeff ("Tenhaeff"), conducted second round interviews and made final hiring decisions.

17. Plaintiff has diagnoses of Irritable Bowel Syndrome (IBS) and Hepatitis C.

18. Plaintiff's IBS is a physical impairment which substantially interferes with one or more major life activity.

19. Specifically, when Plaintiff has flare-ups of her IBS, it causes severe stomach cramping, nausea, fatigue, and limits her ability to work.

20. Plaintiff's Hepatitis C is a physical impairment which substantially interferes with one or more major life activity.

21. Specifically, Plaintiff's Hepatitis C causes joint pain, nausea, fatigue, and interferes with the normal function of her liver.

22. Plaintiff experienced increased IBS and Hepatitis C symptoms of nausea and fatigue in 2019, prompting her to request information from Defendant regarding medical leave.

23. On or about September 26, 2019, Plaintiff called her regional human resources representative, Sarah Sichko ("Sichko"), and informed her of her IBS and Hepatitis C diagnoses.

24. During this September 26, 2019 phone call, Plaintiff informed Sichko that

3

her medical conditions made it difficult for her to work the extreme hours she had been forced to work due to staffing shortages.

25. Sichko advised Plaintiff to apply for FMLA leave and provided her with the contact information for another human resources representative, Angela Chisholm ("Chisholm"), who was responsible for processing FMLA and ADA accommodation requests.

26. Plaintiff called Chisholm the same day, and Chisholm provided her with information to complete FMLA paperwork with Wireless Vision's third-party administrator, Unum.

27. On or about September 26, 2019, Plaintiff submitted a leave request to Unum.

28. On or about October 17, 2019, Plaintiff's medical provider, Dr. Richard Nguyen, completed and submitted Plaintiff's FMLA paperwork indicating diagnoses of Hepatitis C and IBS.

29. Dr. Nguyen certified that it was medically necessary for Plaintiff to be off work due to episodic flare-ups approximately eight times per month, and that she may require additional treatment following referral to a specialist.

30. Unum policy required Plaintiff to report her FMLA-qualifying absences within fifteen days.

31. Other than reporting her absences to Unum, Plaintiff received no guidance from Unum or Wireless Vision regarding how to report her absences or how the company would cover her shifts.

32. On days Plaintiff's IBS flared and she was unable to work, she spent

4

significant amount of time attempting to find staff coverage from other stores; these attempts were often unsuccessful because many other stores were also short-staffed or employees were instructed not to work overtime.

33. Throughout this time, Plaintiff was in regular communication with Sichko about her attempts to obtain coverage for her store and her need for medical leave due to her disabilities.

34. On October 7, 2019, Plaintiff closed the store early due to an IBS flare and inability to find staff coverage for her shift.

35. Plaintiff spoke to Sichko on October 7, 2019 to inform her that she was closing the store early due to an IBS flare.

36. On October 9, 2019, Plaintiff closed the store early due to an IBS flare and inability to find staff coverage.

37. Plaintiff spoke to Sichko on October 9, 2019 to inform her that she was closing the store early due to an IBS flare.

38. On October 10, 2019, Plaintiff was forced to open the store late because she was the only available employee.

39. For security reason, Wireless Vision policy requires at least two employees working at a store during open hours.

40. Plaintiff spoke with Sichko on October 10, 2019 regarding her inability to open the store due to staff coverage.

41. Sichko instructed Plaintiff not to open the store alone.

42. With Sichko's approval, Plaintiff downloaded a company branded sign from the employee intranet to inform customers of changes to store hours.

5

43. Plaintiff was also forced to close the store early due to her IBS on October 13 and October 15, 2019.

44. Plaintiff had doctor's appointments related to her IBS on October 16 and October 17, 2019.

45. Plaintiff arranged for an employee from another store, George (last name unknown), to work on October 17, 2019.

46. However, he informed her at 4:45 p.m. the day prior that his manager told him he could not work the shift because he was not allowed to work overtime.

47. Because Plaintiff was unable to find staff coverage for this day, she opened her store late.

48. Upon information and belief, Tenhaeff was on vacation from approximately October 7 through October 21, 2019 with minimal cell phone reception.

49. On October 20, 2019, Plaintiff had an IBS flare and was unable to work.

50. She informed Tenhaeff via text message on October 20, 2019 that she was "super sick" and asked if he could provide staff coverage.

51. Tenhaeff responded, "I don't, have you asked your peers?"

52. When Plaintiff replied, "Okay and yes I have," Tenhaeff did not respond.

53. Because she had no staff to open her store, Plaintiff placed the company sign on the store stating that the store would be closed on October 20, 2019.

54. On October 22, 2019, Plaintiff texted Tenhaeff [*sic*], "So you are aware I'm super sick and everyone I call doesnt have any one to work here, so tomorrow is gonna be difficult." Tenhaeff did not respond.

55. On October 23, 2019, Plaintiff again had an IBS flare and was forced to

6

close the store early due to lack of staff coverage.

56. On October 25, 2019, Tenhaeff terminated Plaintiff's employment for being "non-compliant with store business operating hours."

57. When Plaintiff told Tenhaeff that she had taken FMLA leave, he told her that it "doesn't matter."

58. In Plaintiff's termination letter, Wireless Vision provided seven dates on which the store closed early, two dates on which it opened late, and one date on which it was not open.

59. Of the ten days Plaintiff's store was non-complaint with store operating hours, nine of them were dates on which Plaintiff used intermittent FMLA leave for her disability-related absences.

60. Plaintiff's only non-FMLA and non-disability related absence was October 10, 2019, when Sichko advised Plaintiff not to open the store alone.

61. Wireless Vision terminated Plaintiff for taking FMLA leave due to her disabilities.

62. On March 30, 2020, Plaintiff filed an EEOC charge alleging disability discrimination.

63. On May 6, 2020, Plaintiff amended her EEOC charge to allege retaliation for requesting an accommodation for her disability.

64. On June 24, 2021, Plaintiff received a Right to Sue letter from the EEOC.

## COUNT I
## INTERFERENCE IN VIOLATION OF THE FAMILY MEDICAL LEAVE ACT
## 29 U.S.C. § 2615

65. Plaintiff reasserts and realleges each and every allegation in this complaint

as if fully set forth herein.

66. It is unlawful for an employer to interfere with, restrain, or deny the exercise of any right under the FMLA. 29 U.S.C. § 2615.

67. At all relevant times, Defendant employed more than 50 employees and as such, is an employer for purposes of FMLA, subject to FMLA requirements.

68. Plaintiff was an "eligible employee" entitled to take leave pursuant to the FMLA.

69. Plaintiff has a "serious health condition" as defined by the FMLA and was incapacitated as a result of that condition.

70. Plaintiff provided sufficient notice of her need to take leave under the FMLA.

71. Defendant interfered with Plaintiff's right to FMLA leave by forcing her to perform work on days she had FMLA-qualifying absences, including by requiring her to contact other employees to work for her.

72. Defendant terminated Plaintiff as a result of her requests and necessity for FMLA leave, interfering with Plaintiff's rights under the FMLA.

73. As a direct, intentional, and willful consequence of such illegal conduct, Plaintiff suffered adverse employment actions including termination of employment.

74. Plaintiff is entitled to recover damages against Defendant in an amount to be proven at trial.

**COUNT II**
**DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT**

75. Plaintiff reasserts and realleges each and every allegation in this complaint as if fully set forth herein.

76. Plaintiff satisfied her administrative exhaustion requirements by filing a disability discrimination charge with the EEOC and filing this complaint within 90 days of receiving her Right to Sue letter.

77. The ADA prohibits discrimination against a qualified individual with a disability in regard to terms, conditions and privileges of employment.

78. Plaintiff has a physical or mental impairment that substantially limits a major life activity.

79. In the alternative, the length of time during which Plaintiff has experienced symptoms, from which she will continue to suffer, constitutes a record of impairment.

80. In the alternative, Plaintiff was regarded as having a disability under the ADA.

81. Plaintiff is diagnosed with Hepatitis C, which constitutes a disability as defined by the ADA.

82. Plaintiff is diagnosed with IBS, which constitutes a disability as defined by the ADA.

83. Plaintiff was qualified to perform the essential duties of her position.

84. Plaintiff reasonably requested time away from work as made necessary by her disability and indicated that future leave was necessary.

85. Defendant failed to engage in the interactive process with Plaintiff and instead terminated her employment upon her return from FMLA leave.

86. Upon information and belief, Defendant treated Plaintiff disparately as compared to other similarly situated non-disabled employees because of her disability.

87. Defendant discriminated against Plaintiff by terminating her due to her

9

disabilities. Such termination constitutes adverse employment action as contemplated by the ADA.

88. As a direct, intentional, and willful consequence of such illegal conduct, Plaintiff suffered adverse employment actions including, inter alia, termination of employment.

89. As a result, Plaintiff has been damaged in an amount to be proven at trial.

## COUNT III
## RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT

90. Plaintiff incorporates by reference all of the above allegations as though fully set forth herein.

91. Plaintiff satisfied her administrative exhaustion requirements by filing a disability discrimination charge with the EEOC and filing this complaint within 90 days of receiving her Right to Sue letter.

92. The ADA prohibits discrimination against any individual because such individual engaged in protected activity under the ADA. *See* 42 U.S.C. § 12203(a).

93. Plaintiff engaged in a protected activity by requesting reasonable accommodations and taking medical leave for her disabilities.

94. Defendant retaliated against Plaintiff for engaging in protected activity by terminating her employment.

95. As a result of Defendant's illegal conduct, Plaintiff has been damaged in an amount to be proven at trial.

## CONCLUSION AND PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendant Wireless Vision,

as follows:

    A.    An award of damages for all counts in an amount to be proven at trial;

    B.    An award of compensatory and punitive damages in an amount to be proven at trial; and;

    C.    Liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii); and

    D.    Reasonable attorneys' fees and other expenses under the FMLA and ADA pursuant to 29 U.S.C.A. § 2617(3). ;

    E.    An award of back pay and front pay;

    F.    Pre- and post-judgment interest;

    G.    Any other remedies or judgments deemed just and equitable by this Court.

### JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.

RESPECTFULLY SUBMITTED September 1, 2021.

**ZOLDAN LAW GROUP, PLLC**

By: /s/ Amanda Kuklinski
14500 N. Northsight, Blvd., Suite 133
Scottsdale, AZ 85260
Attorneys for Jennivene France

**VERIFICATION**

Plaintiff Jennivene France declares under penalty of perjury that she has read the foregoing Verified Complaint and is familiar with the contents thereof. The matters asserted therein are true and based on her personal knowledge, except as to those matters stated upon information and belief, and as to those matters, she believes them to be true.

_____
Jennivene France